*PAID # 15000946*

*'39*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**MARK W. DOBRONSKI,**
an individual,

                    Plaintiff,

v.

**LABOVICK & LABOVICK, P.A.,**
a Florida professional association,
d/b/a **LABOVICK LAW GROUP,**

                    Defendant.

Case:4:24-cv-10561
Judge: Behm, F. Kay
MJ: Ivy, Curtis
Filed: 03-06-2024 At 11:23 AM
CMP DOBRONSKI V LABOVICK & LABOVICK
, P.A. (LG)

---

## COMPLAINT

NOW COMES the Plaintiff, MARK W. DOBRONSKI, appearing *in propria persona*, and for his complaint against Defendant LABOVICK & LABOVICK,P.A. alleges:

1. This matter arises under the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227, *et seq.*, and the Florida Telemarketing Sales Act ("FTSA"), Fla. Stat. § 501.059.

### Parties

2. Plaintiff is an individual, of the age of majority, a citizen of the United States of America, is a resident of and has a place of business in Orange County, Florida, has a residence and place of business in Washtenaw County, Michigan, and has a place of

business in Wayne County, Michigan.

3. Defendant LABOVICK & LABOVICK, P.A. ("Labovick"), is a professional corporation organized and existing under the laws of the State of Florida, that does business under the fictitious business name of LABOVICK LAW GROUP, with its principal place of business located at 5220 Hood Road, Suite 200, Palm Beach Gardens, Florida 33418-8910.

## Jurisdiction

4. This Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

5. This Court has limited personal jurisdiction over Defendant Labovick pursuant to M.C.L. § 600.715, as a result of the defendant transacting any business within the state; and/or doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.

## Venue

6. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(2), as the tortious or illegal telephone calls complained of herein were received in this judicial district and while Plaintiff was located in this judicial district, to wit, the Eastern District of Michigan.

## Preliminary Statement

7. As the Supreme Court recently explained, "Americans passionately disagree amount many things. But they are largely united in their disdain for robocalls." *Barr v. American Association of Political Consultants LLC*, 140 S. Ct. 2335, 2343 (2020).

8. The Federal Government receives a staggering number of complaints about robocalls – 3.7 million complaints in 2019 alone. *Id.*

9. In response to widespread public outrage over intrusive telemarketing calls to homes and businesses, the United States Congress acted to prevent persons, like Defendant, from invading American citizen's privacy and to prevent abusive "robocalls" by enacting the TCPA.

10. According to the Federal Communications Commission ("FCC"), "Unwanted calls and texts are the number one complaint to the FCC."

11. In regard to such telephone solicitations, Senator Hollings of South Carolina, the primary sponsor of the TCPA, explained, "computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall... these computerized telephone calls threaten our personal safety... These machines are out of control, and their use is growing by 30 percent every year. It is telephone terrorism, and it has got to stop...." See *In the*

*Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 17 FCC Rcd. 17459, 17474, fn. 90 (2002), quoting 137 Cong. Rec. 30,821-30,822 (Nov. 7, 1991).

12. According to YouMail, Inc., a company which tracks robocall activity and publishes the YouMail Robocall Index, during calendar year 2021 alone, American consumers were bombarded with over 50.5 *billion* robocalls; an average of over 150 robocalls to each man, woman, and child. [Source: www.robocallindex.com ].

13. In 2021, nearly 1 in 3 Americans say they have fallen victim to a phone scam in the past year, with reported losses to phone scams exceeding $29.8 Billion. [Source: www.cndb.com/2021/06/29/americans-list-billions-of-dollars-to-phone-scams-over-the-past-year.html ].

14. Congress has found that interstate telemarketing fraud has become a problem of such magnitude that the resources of the Government are not sufficient to ensure adequate consumer protection from such fraud.

15. As a result, in enacting the TCPA, Congress intentionally created a legally enforceable bounty system, not unlike *qui tam* statutes, to incentivize the assistance of aggrieved private citizens to act as "private attorneys general" in enforcing federal law.

### Telephone Consumer Protection Act

16. In 1991, Congress enacted the TCPA to restrict the use of sophisticated

telemarketing equipment that could target millions of consumers *en masse.* Congress found that these calls were not only a nuisance and invasion of privacy to consumers specifically, but were also a threat to interstate commence generally. *See* S. Rep. No. 102-178, at 2-3, 1991 U.S.C.C.A.N. 1968, 1969-71, 1991 WL 211220 (1991).

17.   The TCPA imposes restrictions on the use of automated telephone equipment including, *inter alia*, the use of recorded messages.  47 U.S.C. § 227(b)(1).

18.   Pursuant to authority delegated by Congress to the FCC under the TCPA at 47 U.S.C. § 227(b)(2), the FCC has adopted regulations to implement the aforesaid restrictions on use of automated telephone equipment. The TCPA implementing regulations are promulgated at 47 C.F.R. 64.1200(a), *et seq.*

19.   As part of the restrictions on use of automated telephone equipment, Congress created a private right of action for aggrieved persons to received $500.00 in damages for *each* violation of the subsection of the statute or the regulations prescribed thereunder, which amount the court may treble if the court finds that the defendant willfully or knowingly violated the statute or the regulations. 47 U.S.C. § 227(b)(3).

20.  Additionally, the Congress also sought to protect subscriber privacy rights, and delegated to the FCC authority to initiate a rulemaking proceeding and to adopt to implement methods and procedures that the FCC determines are most efficient to

accomplish the need to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.   47 C.F.R. § 227(c)(1).   The FCC conducted such a rulemaking and implemented regulations to protect telephone subscribers' privacy rights.   See *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 68 FR 44144, 2003 WL 21713245 (July 25, 2003).   The regulations implemented by the FCC are promulgated at 47 C.F.R. § 64.1200(c), *et seq.*, 47 C.F.R. § 64.1200(d), *et seq.*, and 47 C.F.R. § 64.1601(e).

21.   As part of the protection of subscriber privacy rights, Congress created a private right of action for aggrieved persons to receive $500.00 in damages for *each* violation of the subsection of the statute or the regulations prescribed thereunder, which amount the court may treble if the court finds that the defendant willfully or knowingly violated the statute or the regulations. 47 U.S.C. § 227(c)(5).

### Florida Telemarketing Sales Act

22.   The Florida Legislature has enacted statutes governing and restricting telephone solicitors in making telephone sales calls.   The statute includes, *inter alia*, requirements for identification of telephone solicitors and the transmission of caller identification information, prohibitions on the use of automated systems for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent

of the called party, prohibitions on calling telephone numbers appearing on the national do-not-call registry or where a person has previously communicated to the telephone solicitor or other person that he or she does not wish to receive an outbound telephone call, text message, or voicemail transmission. Fla. Stat. § 501.059.

23. The FTSA provides that a called party who is aggrieved by a violation of the section may bring an action to, *inter alia*, recover actual damages or $500, whichever is greater. Fla. Stat. § 501.059(10)(a). Further if the court finds that the defendant's violations were willful or knowing, the court may, in its discretion, treble the amount of the award. Fla. Stat. § 501.059(10)(b).

### General Allegations

24. Plaintiff's residential and cellular telephone lines have been besieged with telemarketing calls hawking such things as alarm systems, Google listings, automobile warranties, health insurance, life insurance, credit cards, and even financial miracles from God. Some calls are blatant scams, including calls purportedly from the Social Security Administration, the U.S. Drug Enforcement Administration, and other government agencies, claiming that arrest warrants have been issued against Plaintiff for alleged drug trafficking and money laundering activities.

25. Plaintiff's residential telephone number is 407-***-0222.

26. Plaintiff's residential telephone number 407-***-0222 is registered on the National Do Not Call Registry maintained by the United States Federal Trade Commission pursuant to 16 C.F.R. Part 310 and has been so registered contiuously since at least August 24, 2022 and at all times subsequent thereto.

27. Plaintiff has residences in Michigan and Florida. Plaintiff's residential telephone lines are arranged such that he can answer calls at the residence he is staying at.

28. The FCC has issued a declaratory ruling defining "called party" as "the subscriber, i.e., the consumer assigned the telephone number dialed and billed for the call, or the non-subscriber customary user of a telephone number included in a family or business calling plan." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02–278, WC Docket No. 07–135, FCC 15–72, 2015 WL 4387780, at *26 ¶ 73 (FCC July 10, 2015).

29. Plaintiff is the subscriber to and a customary user of the called telephone lines, is the one that was the actual recipient of the telephone calls at issue in this complaint, and suffered the nuisance and invasion of privacy of same. Thus, Plaintiff has standing to bring this action for alleged violations of TCPA's robocall provisions. See *Leyse v. Bank of America Nat. Ass'n*, 804 F.3d 316, 324 (C.A.3, 2015).

30. At no time relevant hereto has Plaintiff or any other authorized person

requested, consented, permitted, or authorized the contact from the Defendant or Defendant's agent.

31. At no time has Plaintiff provided permission to the Defendant or Defendant's agent to engage in telephone solicitation with the Plaintiff via telephone.

32. Pursuant to 47 U.S.C. § 217, the act, omission, or failure of any officer, agent, or other person acting for or employed by an common carrier or user, acting within the scope of his employment, shall in every case also be deemed to be the act, omission, or failure of such carrier or user as well as that of the person.

33. Courts are legally bound to give great deference to the FCC's interpretations of the TCPA and its own regulations.

34. At no time has Plaintiff provided "prior express consent" or "prior express written consent" (as those terms are defined under the TCPA and as interpreted by the FCC) for the Defendant or anyone acting on behalf of the Defendants to initiate any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to Plaintiff's residential telephone number.

35. At no time has Plaintiff had an "established business relationship" (as that term is defined under the TCPA and as interpreted by the FCC) with the Defendant.

36. The FCC has declared that "[p]urporting to obtain consent during the call...

9

does not constitute the *prior* consent necessary to deliver the message in the first place as the request... is part of the telemarketing." See *In re Rules and Regulations Implementing the TCPA*, 18 FCC Rcd. 14014, 14019, 2003 WL 21517853, at *49, ¶ 142 (June 26, 2003) [Emphasis as in original].

37. The FCC has clarified that sellers may be held vicariously liable for violations of the TCPA by third-party telemarketers that initiate calls to market the seller's products or services, declaring as follows:

> "[A] company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules and calls placed by a third party on behalf of that company are treated as if the company itself placed the call."

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling, 20 FCC Rcd. 13664, 13667, ¶ 7 (2005).

38. A seller may be liable for violations by its representatives under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification. *In re Dish Network,* 28 FCC Rcd. 6574, 6584, ¶ 28 (2013).

39. When considering individual corporate officer liability, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *See, e.g., Jackson Five Star Catering, Inc. v. Beason,* No. 10-

10

10010, 2013 U.S. Dist. LEXIS 155985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participating in or personally authorized the conduct found to have violated the statute.") (internal citation omitted); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D.MD. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

40. It is well settled under Michigan law that corporate employees and officials are personally liable for all tortious and criminal acts in which they participate, regardless of whether they are acting on their own behalf or on behalf of a corporation. A corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent for the corporation and not on his own behalf.

41. Parties are acting in concert when they act in accordance with an agreement to cooperate in a particular line of conduct or to accomplish a particular result. The agreement need not be expressed in words or may be implied and understood to exist from the conduct itself. Whenever two or more persons commit tortious acts in concert, each become subject to liability for the acts of the others, as well as for his own acts. In either case, the defendant's embrace of the actor's purpose or design—whether by

11

agreement or by action—renders the defendant liable for the underlying tort.

42. The liability of coconspirators to civil damages is joint and several. All those who, in pursuance of a common plan to commit a tortious act actively take part in it and further it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or who ratify and adopt the acts done for their benefit, are equally liable with him.

43. For each and every call alleged herein initiated to Plaintiff's telephone line, Plaintiff suffered the injury of invasion of privacy and intrusion on Plaintiff's right of seclusion.

44. For each and every call alleged herein initiated to Plaintiff's telephone line, Plaintiff suffered the injury of the occupation of the telephone line by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls, including emergency calls, when the telephone line was seized by Defendant's calls.

45. For each and every call alleged herein initiated to Plaintiff's telephone line, Defendant caused an injury in the form of a nuisance and annoyance to the Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features on Plaintiff's telephone, which features are designed to

inform the user of important missed communications.

46. Each and every call placed without consent by Defendant alleged herein to Plaintiff's telephone lines resulted in the injury of a trespass to Plaintiff's chattel, namely Plaintiff's telephone line and its telephone services.

47. For purposes of the TCPA, the FCC has defined "willfully or knowingly" to mean that the violator knew that he was doing the act in question, in this case, initiating a telephone solicitation, irrespective of any intent to violate the law. A violator need not know that his action or inaction constitutes a violation; ignorance of the law is not a defense or mitigating circumstance.

### The Scheme

48. Lawyers and law firms across the United States are always seeking to make money from representing individuals who have been injured.

49. These lawyers and law firms will often hired third-party telemarketers to locate individuals who have suffered a personal injury and to solicit these individuals to be represented by the lawyer or law firm.

50. One such area where lawyers and law firms attempt to find clients are those persons who have been injured in an automobile accident.

51. In attempting to locate automobile accident victims, law firms, including Defendant, are engaging in mass telemarketing and robocalling campaigns to broad

swathes of the United States, in apparent disregard of the TCPA.

52. Defendant is engaged in soliciting members of the public to be represented by Defendant in filing claims and lawsuits and other matters arising out of and suffered by individuals related to a motor vehicle accident.

53. In general, lawyers are prohibited from soliciting clients in person, on the telephone, and through real-time electronic communication, unless the person the are talk to is: a lawyer, a family member, close friend, or prior business associate; or someone who routinely uses similar legal services for their business. American Bar Association ("ABA") Model Rules Prof. Conduct 7.3.

54. Defendant utilizes third-party telemarketers, or lead generators, to initiate telephone calls *en masse* using automated telephone dialing systems, which have the capacity to store or produce telephone numbers to be called using a random or sequential number generator to dial such numbers, and/or utilize pre-recorded messages, to solicit consumers to utilize Defendants' legal services.

55. Defendant approved the contracts with and pay the third-party telemarketers to engage in the illegal telephone solicitations.

56. The third-party telemarketers will call and query consumers to determine if they meet the pre-qualification criteria set by Defendant to be a suitable plaintiff in an motor vehicle accident case.

14

57. If, at any point in the telephone solicitation, the called consumer fails to meet the designated pre-qualification criteria, the third-party telemarketer will immediately terminate the call – usually very impolitely – and move on to initiating another call to another consumer.

58. In order to maximize efficiency, the third-party telemarketer utilizes automated equipment to transmit a recorded message to the called consumer, and automated interactive voice response system to do the initial pre-qualification screening.

59. If the called consumer meets the pre-qualification criteria, the automated syustem will then transfer the call to a "verifier" to make a second review of the pre-qualification criteria with the consumer.

60. Once the consumer has been pre-qualified and verified, the consumer is informed that the call is being transferred to an "attorney" or to the law firm, at which point the call is transferred to an agent who will further discuss legal representation of the consumer and seek to have the consumer to agree to legal representation with regard to a motor vehicle accident case.

61. A representation agreement is then sent to the consumer, either via text mail or electronic mail for the consumer to electronically sign to retain the defendant law firm.

62. The text mail or electronic mail application which is utilized will allow the called party to print a copy of the representation agreement only after the called party has electronically signed the agreement, thereby protecting the confidentiality of the defendant law firm.

63. It is only at the stage where the representation agreement is provided to the consumer that the consumer is able to determine the names of the attorneys or law firm.

64. Defendant instructs their third-party telemarketers to identify with generic business names, such as "Accident Management Help Line" and not identify with any identifiable business name in order to conceal their true identity in order to evade liability for, *inter alia*, TCPA violations.

65. When Plaintiff has sought better identification from the third-party telemarketer, the telemarketer will avoid providing any information and/or will hang up. This is obviously done because the Defendants and their third-party telemarketers all know that the entire concert of action which they are engaged in is illegal.

66. In those instances where Plaintiff has made a "do-not-call" demand to the third-party telemarketer, the telemarketer will typically utter profanities at Plaintiff and hang up.

67. To further conceal identities, the third-party telemarketer will falsify or

"spoof" their caller identification number information such that the called party is unable to call the third-party telemarketer back to, *inter alia*, ascertain their identity or to make a "do not call" demand.

68. Defendant is fully cognizant of the illegal nature of the telephone solicitations and the illegal activities of their third-party telemarketers, but engages in willful blindness to the illegal telemarketing activities of their telemarketing agents because doing so benefits them financially when they generate new clients through illegal telemarketing.

69. The third-party telemarketers have actual authority or apparent authority from the Defendant to solicit consumers for representation by the Defendant. This fact is evident because the third-party telemarketer will live transfer the call to the Defendant law firm and the Defendant law firm readily accepts the call and attempts to "close the sale."

70. Defendant personally authorized, directed, had control over, participated, and ratified the telephone solicitation activities by accepting the representation agreements which are produced as a result.

71. Defendant derives substantial financial benefits from the telephone solicitations and the resultant representation agreements.

72. Because the telemarketers engaged in illegal telephone solicitations utilize

17

deceptive practices designed to conceal their actual identities, and the defendant law firm has refused to identify their third-party telemarketers, Plaintiff has had to resort to various investigative techniques to identify the sources of the telemarketing calls being received.

73. One investigative technique utilized by Plaintiff is termed a "canary trap", wherein Plaintiff provides false, but unique, identifying information during each received call, in particular a unique name. The unique information supplied acts like a fingerprint. If and when that unique information surfaces at a later date, a tie-in between the two events, and hence the ability to identify the source call, is able to be made.

74. To date, the identities of the third-party telemarketers utilized by the Defendant remain unknown to Plaintiff, however Plaintiff has been able to ascertain the email address of one such third-party telemarketer as being lawyermatchline.com.

75. As discovery progresses in this case and Plaintiff is able to learn the true identity or identities of the third-party telemarketers centers that Defendant has utilized to initiate the telephone solicitations, Plaintiff will seek to amend this complaint to add the third-party telemarketers as additional named defendants.

76. Also as discovery progresses in this case, Plaintiff anticipates learning of additional telephone solicitation calls for which Defendant or Defendant's third-party

telemarketers are responsible, at which time Plaintiff will seek to amend this complaint to supplement the damages claims.

## Calls 1-5

77. On each of the following dates and times, Defendant or Defendant's agent initiated a telemarketing call to Plaintiff's residential telephone line 407-***-0222 which call displayed caller identification number information shown respective thereto:

| Call | Date | Time | Caller ID Number |
|------|------|------|------------------|
| 1 | 06/27/2023 | 11:43 A.M. | 407-226-4619 |
| 2 | 06/27/2023 | 12:03 A.M. | 407-219-4728 |
| 3 | 06/27/2023 | 3:49 P.M. | 407-773-5157 |
| 4 | 06/28/2023 | 11:27 A.M. | 407-770-0646 |
| 5 | 07/21/2023 | 3:58 P.M. | 407-379-4397 |

78. Upon Plaintiff answering the telephone by saying "hello", Plaintiff would hear a click sound, followed by approximately 5 to 6 seconds of silence, followed by a recorded message stating as follows:

> "Hi. This is Jane calling you from Accident Management Help Line. How are you doing today? [Delay.] Great. I am actually calling you regarding a previous car accident that happened in the last 2 years, when someone hit your car and it was not your fault. Do you remember that? [Delay.] Regarding the accident we have been told that there was some compensation that you were entitled to receive for yourself from the other driver's insurance. So we just want to confiRm. Have you received that or no? [Delay.] Alright. Well, according to our records, the accident you had was not your fault and it was settled in your favor? Is that correct? [Delay.] When the accident happened you were alone or you had someone in the car with you?

19

> [Delay.] Alright. What I can do is that I can transfer you to my verification officer and he can assist you further regarding any question that you had. Ok? [Delay.] Please don't hang up the line. I'll be with you the whole time."

79. In to better identify the caller, Plaintiff responded to each of the interactive voice response prompts during the recorded message.

80. On each occasion, after a brief delay after the recorded message ended, the call would suddenly disconnect.

81. Immediately after the termination of each call, Plaintiff dialed the caller identification number displayed to make a do not call demand, only to find that the dialed number was invalid.

## Call 6

82. On July 22, 2023, at approximately 10;24 A.M., Defendant or Defendant's agent initiated a telemarketing call to Plaintiff's residential telephone line 407-***-0222.

83. The caller identification number displayed was 407-389-5536.

84. Upon Plaintiff answering the telephone by saying "hello", Plaintiff heard a click sound, followed by approximately 5 to 6 seconds of silence, followed by a recorded message identical to that set forth at paragraph 78.

85. In order to better identify the caller, Plaintiff responded to each of the interactive voice response prompts during the recorded message.

86. The call was transferred to a live telemarketer who identified himself as "Austin, with Accident Management Services, on a recorded line."

87. Austin asked Plaintiff a number of pre-qualifying questions, including name. Plaintiff provided a "canary trap" name of Alexander Bell.

88. The call was then transferred to another telemarketer (female), who identified herself as "This is Myra, were you involved in an car accident within the last 2 years?". Plaintiff responded "yes". Myra asked more pre-qualifying questions, including Plaintiff's zip code.

89. Myra then responded that she does not have an attorney available in Plaintiff's zip code.

90. Plaintiff asked Myra how she had received Plaintiff's name and telephone number, to which Myra responded that Plaintiff had called her.

91. Plaintiff made demand to Myra to be provided a copy of her written do not call policy, to which Myra responded that she does not know what that is.

92. Plaintiff made demand to Myra to be placed upon their internal do-not-call list, to which Myra stated "piece of s***" and hung up.

93. Immediately after the termination of the call, Plaintiff dialed the caller identification number displayed (407-389-5536) to make a do-not-call demand; a recorded message stated that the number was not in service.

**Calls 7-13**

94.  On each of the following dates and times, Defendant or Defendant's agent initiated a telemarketing call to Plaintiff's residential telephone line 407-***-0222 which call displayed caller identification number information shown respective thereto:

| Call | Date | Time | Caller ID Number |
|------|------|------|------------------|
| 7 | 07/22/2023 | 11:44 A,M. | 407-337-1313 |
| 8 | 07/24/2023 | 4:12 P.M. | 407-264-7245 |
| 9 | 07/24/2023 | 4:49 P.M. | 407-701-7263 |
| 10 | 07/26/2023 | 5:46 P.M. | 407-423-9294 |
| 11 | 08/24/2023 | 11:49 P.M. | 407-439-8579 |
| 12 | 08/24/2023 | 12:57 P.M. | 407-565-0425 |
| 13 | 08/24/2023 | 3:51 P.M. | 407-256-4168 |

95.  Upon Plaintiff answering the telephone by saying "hello", Plaintiff heard a click sound, followed by approximately 5 to 6 seconds of silence, followed by a recorded message identical to that set forth at paragraph 78.

96.  In to better identify the caller, Plaintiff responded to each of the interactive voice response prompts during the recorded message.

97.  On each occasion, after a brief delay after the recorded message ended, the call would suddenly disconnect.

98.  Immediately after the termination of each call, Plaintiff dialed the caller identification number displayed to make a do not call demand, only to find that the dialed number was invalid.

## Call 14

99.   On August 25, 2023, at approximately 10:02 A.M., Defendant or Defendant's agent initiated a telemarketing call to Plaintiff's residential telephone line 407-***-0222.

100.  The caller identification number displayed was 407-939-1220.

101.  Upon Plaintiff answering the telephone by saying "hello", Plaintiff heard a click sound, followed by approximately 5 to 6 seconds of silence, followed by a recorded message identical to that set forth at paragraph 78.

102.  In order to better identify the caller, Plaintiff responded to each of the interactive voice response prompts during the recorded message.

103  The call was transferred to a live telemarketer who identified himself as "Jason, with Accident Management Service, on a recorded line."

104.  Jason asked Plaintiff a number of pre-qualifying questions, including name.  Plaintiff provided a "canary trap" name of Leroy Pullman.

105.  The call was the transferred to a female telemarketer who did not identify by name, and answered by stating "Hi. Are you calling to sepak with a car accident lawyer?"  The female asked more pre-qualifying questions.

106.  The call was then transferred to yet another telemarketer (female), who also did not identify herself, but answered the call identifying as "Thank you for

calling Lawyer Connect Line". The female asked more pre-qualifying questions. The female then stated that she was transferring the call over to the attorney's office.

107.   The call was transferred and answered by a recorded message stating "Thank you for calling the Labovick Law Group.   Your call may be recorded for quality purposes." The call then was picked up by a live telemarketer who identified himself as "Miguel with the Intake Team for the Labovick Law Group." During the transfer process, the female that did the transfer identified herself to "Miguel" as "Zamora from MPM".

108.   Miguel went over the information which Plaintiff had provided to the earlier telemarketers. Miguel then e-mailed to Plaintiff a contract on Labovick Law Group letterhead for Labovick to represent Plaintiff regarding a motor vehicle accident claim.

109.   Plaintiff confronted Miguel regarding the persons that had called Plaintiff. Miguel stated that the callers were from ACCIDENT.COM, and that ACCIDENT.COM transferred the call to Miguel.

110.   Plaintiff asked Miguel for the name of the attorney that would be handling the matter and was informed that the attorney's name is Christian Bie.

111.   Immediately after the termination of the call, Plaintiff dialed the caller identification number which had been supplied (407-939-1220) to make a do not call

demand and received a recording stating that the number is no longer in service.

112. On August 25, 2023, at approximately 10:44 A.M., Plaintiff telephoned The Labovick Law Group at 561-625-8400 (which telephone number appeared on the representation contract which had been e-mailed to Plaintiff) and asked to speak with Christian Bie. Plaintiff was told that Christian Bie was not available and left a message for him to call back.

113. On August 25, 2023, at approximately 11:07 A.M., Plaintiff received a return call from Christian Bie. Plaintiff confronted Bie regarding the telemarketing calls received. Bie stated that his law firm hired ACCIDENT.COM to engage in in telemarketing calls to locate potential clients for Labovick. Plaintiff informed Bie that the calls were unwelcome, that Plaintiff's telephone number is listed on the National Do Not Call Registry, and to add Plaintiff's telephone number to Labovick's internal do not call list.

### Call 15

114. On August 25, 2023, at approximately 3:58 P.M., Defendant or Defendant's agent initiated a telemarketing call to Plaintiff's residential telephone line 407-***-0222.

115. The caller identification number displayed was 561-625-8383.

116. Upon Plaintiff answering the telephone by saying "hello", Plaintiff heard

a click sound, followed by approximately 5 seconds of silence, followed by the same "Miguel" coming onto the line and asking to speak with Leroy Pullman.

117. Miguel was calling to follow up on Plaintiff signing the Labovick representation contract.

118. Plaintiff confronted Miguel regarding the fact that Plaintiff was still receiving unwanted telemarketing calls from Labovick, given the fact that Plaintiff had made direct do not call demands to Labovick.

119. Despite Plaintiff's clear and unequivocable protestations to Miguel regarding the receipt of the unwelcome telemarketing calls from Labovick and for Labovick to "do not call", Miguel continued to push Plaintiff to sign the Labovick representation contract.

## Call 16

120. On August 27, 2023, at approximately 10:33 A.M., Defendant or Defendant's agent initiated a telemarketing call to Plaintiff's residential telephone line 407-***-0222.

121. The caller identification number displayed was 561-625-8383.

122. Upon Plaintiff answering the telephone by saying "hello", Plaintiff heard a click sound, followed by approximately 5 seconds of silence, followed by a female identifying herself as "Joyce from the Labovick Law Group" asking to speak with

Leroy Pullman.

123. Joyce was calling to follow up to having Leroy Pullman sign the representation contract with Labovick.

124. Plaintiff confronted Joyce regarding the fact that Plaintiff continues to receive telemarketing calls from Labovick despite having previously made do not call demands.

125. Joyce stated that the calls are made by an automated system that "just calls people in the database".

126. Joyce apologized and stated that she would not call again.

### Call 17

127. On August 27, 2023, at approximately 10:42 A.M., Defendant or Defendant's agent initiated a telemarketing call to Plaintiff's residential telephone line 407-***-0222.

128. The caller identification number displayed was 561-625-8383.

129. Upon Plaintiff answering the telephone by saying "hello", Plaintiff heard dead air, after 10 seconds the call disconnected.

130. The fact that the caller identification number display was the same as in Calls 15 and 16 evidences that the call was from the same source.

**Calls 18-24**

131. On each of the following dates and times, Defendant or Defendant's agent initiated a telemarketing call to Plaintiff's residential telephone line 407-***-0222 which call displayed caller identification number information shown respective thereto:

| Call | Date | Time | Caller ID Number |
|------|------|------|------------------|
| 18 | 09/01/2023 | 2:30 P.M. | 407-773-2891 |
| 19 | 09/05/2023 | 10:42 A.M. | 407-569-9968 |
| 20 | 09/07/2023 | 3:34 P.M. | 407-391-4532 |
| 21 | 09/08/2023 | 4:33 P.M. | 407-393-4032 |
| 22 | 09/08/2023 | 4:47 P.M. | 407-758-2740 |
| 23 | 09/18/2023 | 2:38 P.M. | 407-704-2173 |
| 24 | 09/20/2023 | 11:20 P.M. | 407-633-9302 |

132. Upon Plaintiff answering the telephone by saying "hello", Plaintiff heard a click sound, followed by approximately 5 to 6 seconds of silence, followed by a recorded message identical to that set forth at paragraph 78.

133. In to better identify the caller, Plaintiff responded to each of the interactive voice response prompts during the recorded message.

134. On each occasion, after a brief delay after the recorded message ended, the call would suddenly disconnect.

135. Immediately after the termination of each call, Plaintiff dialed the caller identification number displayed to make a do not call demand, only to find that the dialed number was invalid.

### Confrontation Call

136.  On September 8, 2023, at approximately 1:20 P.M., Plaintiff called the Labovick Law Group at 561-625-8400 to make another do not call demand.

137.  The call was answered by "Miguel."

138.  Plaintiff confronted Miguel regarding the recorded message calls which Plaintiff was continuing to receive. Miguel stated that there was nothing that Labovick could do because another company actually initiated the calls.

139.  Miguel acknowledge that the "another company" had been hired by Labovick to seek out clients for Labovick.

140.  Miguel acknowledged that Plaintiff had previously, on more than one occasion, made direct demands to Labovick to "do not call" Plaintiff.

### COUNT I
### VIOLATION OF THE TCPA - AUTODIALER CALL

141.  Plaintiff incorporates the allegations of paragraphs 1 through 140, *supra*.

142.  Each of Calls 1 through 14, and 18 through 24, *supra*, were in violation of the TCPA regulations, specifically 47 C.F.R. 64.1200(a)(3), as Defendants or Defendants' agent initiated a telephone call to a telephone line to a telephone line using an artificial or prerecorded voice to deliver a message without the prior express written consent of the called party and there being no emergency.

143.  The aforesaid violations of the TCPA were willful and/or knowing as the

calls continued even after Plaintiff had made express do not call demands to the Defendant.

**COUNT II**
**VIOLATION OF THE TCPA - NO AUTOMATED OPT-OUT**

144. Plaintiff incorporates the allegations of paragraphs 1 through 140, *supra.*

145. Each of Calls 1 through 14, and 18 through 24, *supra*, were in violation of the TCPA regulations, specifically 47 C.F.R. § 64.1200(a)(7)(i), as Defendants or Defendants' agent initiated a telephone call to Plaintiff's telephone line and a live sales representative was not available and did not speak to Plaintiff within two (2) seconds after the called person's completed greeting and did not provide an option for Plaintiff to make an opt-out request.

146. The aforesaid violations of the TCPA were wilful and/or knowing as is evidenced by the repeated number of calls.

**COUNT III**
**VIOLATION OF THE TCPA - DO NOT CALL**

147. Plaintiff incorporates the allegations of paragraphs 1 through140, *supra.*

148. Each of Calls 1 through 24, *supra*, were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(c)(2, as Defendants or Defendants' agent initiated a telephone solicitation to a residential telephone subscriber who had registered his telephone number on the national do-not-call registry of persons

who do not wish to receive telephone solicitations that is maintained by the Federal Government.

149.  The aforesaid violations of the TCPA were wilful and/or knowing as is evidenced by the repeated number of calls, as well as repetitive demands made by the Plaintiff to the callers to do not call.

## COUNT IV
## VIOLATION OF THE TCPA - DO NOT CALL

150.  Plaintiff incorporates the allegations of paragraphs 1 through140, *supra*.

151.  Each of Calls 7 through 24, *supra*, were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(d)(3), as Defendants or Defendants' agent initiated a telephone solicitation to a residential telephone subscriber who had previously made a do-not-call request.

152.  The aforesaid violations of the TCPA were wilful and/or knowing as is evidenced by the repeated number of calls, as well as the telephone call where the telemarketer admitting that Plaintiff's telephone number was on the do-not-call list.

## COUNT V
## VIOLATION OF THE TCPA - FAILURE TO IDENTITY

153.  Plaintiff incorporates the allegations of paragraphs 1 through 140, *supra*.

154.  Each of Calls 1 through 14, and 18 through 24, *supra*, were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(d)(4), as

Defendants or Defendants' agent entity making the call for telemarketing purposes did provide not the called party with the name of the individual caller, and/or the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted.  Where an entity name was provided, it was a false name and not the name of the entity on whose behalf the call is being made.

155.  The aforesaid violations of the TCPA were wilful and/or knowing as is evidenced by the repeated number of calls.

**COUNT VI**
**VIOLATION OF THE TCPA - SPOOFED CALLER ID**

156.  Plaintiff incorporates the allegations of paragraphs 1 through 140, *supra.*

157.  Each of the Calls 1 through 14, and 18 through 24, *supra*, were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1601(e)(1), as Defendants and/or Defendants' agents failed to provide caller identification information displaying a telephone number which would permit any individual to make a do-not-call request during regular business hours.

158.  The fact that Defendant or Defendant's agent had to take deliberate action to manipulate the caller identification information evidences that the aforesaid violation of the TCPA was wilful and/or knowing.

## COUNT VII
## VIOLATION OF THE FTSA

159. Plaintiff incorporates the allegations of paragraphs 1 through 140, *supra*.

160. Each of Calls 1 through 24, *supra*, were in violation of the FTSA: specifically Fla. Stat. § 501.059(2), as Defendant or Defendant's agent made an unsolicited telephonic sales call to a residential telephone number and did not identify himself by his or her true first and last names and the business immediately upon making contact by telephone with the person who is the object of the telephone solicitation; and/or Fla. Stat. § 501.059(4), Defendant or Defendant's agent made a unsolciited sales call to a residential telephone number appearing on the national do-not-call list; and/or Fla. Stat. § 501.059(5), Defendant or Defendant's agent made an outbound telephone call to a consumer who had previously communicated to the telephone solicitor or other person that he or she does not wish to receive an outbound telephone call; and/or Fla. Stat. § 501.059(8)(a), Defendant or Defendant's agent made a telephonic sales call where such call involved an automated system for the selection or dialing of telephone numbers or the playing of a recorded message without the prior express written consent of the called party; and/or Fla. Stat. §501.059(8)(b), Defendant or Defendant's agent made a telephonic sales call and failed to transmit the originating telephone number via the caller identification service.

161. The aforesaid violations of the FTSA were wilful and/or knowing as is

evidenced by the repeated number of calls.

## PRAYER FOR RELIEF

WHEREFORE, the aforesaid premises considered, Plaintiff prays that this Court enter a judgment for Plaintiff and against the Defendants, jointly and severally, as follows:

A.   Damages:

    i.   Damages for violations of the TCPA alleged:

| Count | Violations |
|-------|------------|
| I     | 21         |
| II    | 21         |
| III   | 24         |
| IV    | 18         |
| V     | 21         |
| VI    | 21         |

A total of 126 violations at $500 per violation for damages of $63,000.00, which amount shall be trebled because the violations were willful and/or knowing, for total damages of $189,000.00.

    ii.   Damages for violations of the FTSA alleged at Count VII: 24 violations at $500 per violation, for damages of $12,000.00, which amount

shall be trebled because the violations were willful and/or knowing, for total damages of $36,000.00.

The cumulative total amount of damages claimed in this action is $225,000.00, and in the event of default judgment is the sum certain damages amount that will be sought.

B. An award of Plaintiff's taxable costs and disbursements incurred in the filing and prosecution of this action;

C. An injunction enjoining Defendants from initiating any telephone calls to Plaintiff's residential telephone and cellular telephone lines.

D. Interest accruing from the date of filing until paid at the statutory rate; and,

E. Such other and further relief as this Court deems necessary, reasonable, prudent and proper under the circumstances.

Respectfully submitted,

Dated: February 29, 2024

Mark W. Dobronski
Post Office Box 222
Dexter, Michigan 48130-0222
Telephone: (734) 330-9671
Email: markdobronski@yahoo.com
Plaintiff *In Propria Persona*

JS 44 (Rev. 10/20)

**CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

MARK W. DOBRONSKI

**DEFENDANTS**

LABOVICK & LABOVICK, P.A.
d/b/a LABOVICK LAW GROUP

**(b)** County of Residence of First Listed Plaintiff    Orange, FL
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Palm Beach, FL
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

PRO SE

Case:4:24-cv-10561
Judge: Behm, F. Kay
MJ: Ivy, Curtis
Filed: 03-06-2024 At 11:23 AM
CMP DOBRONSKI V LABOVICK & LABOVICK
, P.A. (LG)

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(For Diversity Cases Only)* and One Box for Defendant

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ]1 | [ ]1 | Incorporated *or* Principal Place of Business In This State | [ ]4 | [ ]4 |
| Citizen of Another State | [ ]2 | [ ]2 | Incorporated *and* Principal Place of Business In Another State | [ ]5 | [ ]5 |
| Citizen or Subject of a Foreign Country | [ ]3 | [ ]3 | Foreign Nation | [ ]6 | [ ]6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | **PERSONAL INJURY** | | [ ] 423 Withdrawal | [ ] 376 Qui Tam (31 USC |
| [ ] 130 Miller Act | [ ] 310 Airplane | [ ] 365 Personal Injury - |    28 USC 157 |    3729(a)) |
| [ ] 140 Negotiable Instrument | [ ] 315 Airplane Product |    Product Liability | | [ ] 400 State Reapportionment |
| [ ] 150 Recovery of Overpayment |    Liability | [ ] 367 Health Care/ | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
|    & Enforcement of Judgment | [ ] 320 Assault, Libel & |    Pharmaceutical | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act |    Slander |    Personal Injury | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted | [ ] 330 Federal Employers' |    Product Liability | [ ] 835 Patent - Abbreviated | [ ] 460 Deportation |
|    Student Loans |    Liability | [ ] 368 Asbestos Personal |    New Drug Application | [ ] 470 Racketeer Influenced and |
|    (Excludes Veterans) | [ ] 340 Marine |    Injury Product | [ ] 840 Trademark |    Corrupt Organizations |
| [ ] 153 Recovery of Overpayment | [ ] 345 Marine Product |    Liability | [ ] 880 Defend Trade Secrets | [ ] 480 Consumer Credit |
|    of Veteran's Benefits |    Liability | **PERSONAL PROPERTY** |    Act of 2016 |    (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | | [X] 485 Telephone Consumer |
| [ ] 190 Other Contract | [ ] 355 Motor Vehicle | [ ] 371 Truth in Lending | **LABOR** |    Protection Act |
| [ ] 195 Contract Product Liability |    Product Liability | [ ] 380 Other Personal | [ ] 710 Fair Labor Standards | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | [ ] 360 Other Personal |    Property Damage |    Act | [ ] 850 Securities/Commodities/ |
| |    Injury | [ ] 385 Property Damage | [ ] 720 Labor/Management |    Exchange |
| | [ ] 362 Personal Injury - |    Product Liability |    Relations | [ ] 890 Other Statutory Actions |
| |    Medical Malpractice | | [ ] 740 Railway Labor Act | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 751 Family and Medical | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** |    Leave Act | [ ] 895 Freedom of Information |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | [ ] 790 Other Labor Litigation |    Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate | [ ] 791 Employee Retirement | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ |    Sentence |    Income Security Act | [ ] 899 Administrative Procedure |
| [ ] 245 Tort Product Liability |    Accommodations | [ ] 530 General | |    Act/Review or Appeal of |
| [ ] 290 All Other Real Property | [ ] 445 Amer. w/Disabilities - | [ ] 535 Death Penalty | **IMMIGRATION** |    Agency Decision |
| |    Employment | **Other:** | [ ] 462 Naturalization Application | [ ] 950 Constitutionality of |
| | [ ] 446 Amer. w/Disabilities - | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration |    State Statutes |
| |    Other | [ ] 550 Civil Rights |    Actions | |
| | [ ] 448 Education | [ ] 555 Prison Condition | | |
| | | [ ] 560 Civil Detainee - | | |
| | |    Conditions of | | |
| | |    Confinement | | |

Bankruptcy column additional:
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

Torts additional:
- [ ] 690 Other

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
47 U.S.C. 227

Brief description of cause:
Illegal telemarketing calls

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ 225,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [X] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____ DOCKET NUMBER _____

DATE    February 29, 2024

SIGNATURE OF ATTORNEY OF RECORD    *Mark W. Dobronski*

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# PURSUANT TO LOCAL RULE 83.11

1.          Is this a case that has been previously dismissed?

☐ Yes
☑ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____

2.          Other than stated above, are there any pending or previously
discontinued or dismissed companion cases in this or any other
court, including state court? (Companion cases are matters in which
it appears substantially similar evidence will be offered or the same
or related parties are present and the cases arise out of the same
transaction or occurrence.)

☐ Yes
☑ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____

Notes : _____

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL

PRIORITY MAIL
FLAT RATE ENVELOPE
POSTAGE REQUIRED



**UNITED STA...**
**POSTAL SER...**

■ Expected delivery date specified

■ Domestic shipments include $10...

■ USPS Tracking® service included...

■ Limited international insurance.**

■ When used internationally, a cus...

*Insurance does not cover certain items. Fo...
Domestic Mail Manual at *http://pe.usps.com*

** See International Mail Manual at *http://pe...*

# FLAT RATE ENV...
ONE RATE ■ ANY WEIGHT

# TRACKED ■ INSU...


PS00001000014

EP14F July 2022
OD: 12 1/2 x 9 1/2

USPS.COM/PICKUP

---



UNITED STATES
POSTAL SERVICE

Retail

**P**

**US POSTAGE PAID**
**$9.85**

Origin=48130
02/29/24
2525100130-09

U.S. MARSHALS

0 Lb 8.90 Oz

**RDC 03**

EXPECTED DELIVERY DAY: 03/02/24

C052

SHIP
TO:   231 W LAFAYETTE BLVD
      DETROIT MI 48226-2700

**USPS TRACKING® #**

9505 5123 0482 4060 2266 02

---

FROM:

MARK W DOBRONSKI
PO BOX 222
DEXTER, MI 48130-0222


RECEIVED
MAR 0 6 2024
CLERKS OFFICE
DETROIT

UNITED STATES DISTRICT COURT
ATTN: CLERK'S OFFICE
231 W LAFAYETTE BLVD FL 5
DETROIT, MI 48226-2700




PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL

PRIORITY MAIL
FLAT RATE ENVELOPE
POSTAGE REQUIRED



# UNITED ST
# POSTAL SER

- Expected delivery date specified
- Domestic shipments include $10
- USPS Tracking® service included
- Limited international insurance.**
- When used internationally, a cus

*Insurance does not cover certain items. Fo
Domestic Mail Manual at http://pe.usps.co
** See International Mail Manual at http://pe

# FLAT RATE ENV
ONE RATE ■ ANY WEIGHT

# TRACKED ■ INSU



PS00001000014

EP14F July 2022
OD: 12 1/2 x 9 1/2

USPS.COM/PICKUP



UNITED STATES
POSTAL SERVICE.

Retail

US POSTAGE PAID
**$9.85**
Origin: 48130
02/29/24
2525100130-09

U.S. PRIORITY MAIL ® S

0 Lb 8.90 Oz

RDC 03

EXPECTED DELIVERY DAY: 03/02/24

C052

SHIP
TO:    231 W LAFAYETTE BLVD
       DETROIT MI 48226-2700

USPS TRACKING® #

9505 5123 0482 4060 2266 02

FROM:

MARK W DOBRONSKI
PO BOX 222
DEXTER, MI 48130-0222



R E C E I V E D
MAR 0 6 2024
TO: CLERK'S OFFICE
DETROIT

UNITED STATES DISTRICT COURT
ATTN: CLERK'S OFFICE
231 W LAFAYETTE BLVD FL 5
DETROIT, MI 48226-2700